SOLOMON R. WASHER v. JOHN CAMPBELL *et al.*

JUSTICE'S COURT — *Garnishment Discharged by Bond — Appeal — Obligors, Bound.* Where a bond is given in a justice's court for the purpose, and having the effect, of releasing and discharging all the garnishment proceedings in that court, and it provides that the obligors shall "pay any judgment which may be rendered against him [the defendant] on final hearing of this case," *held,* that such bond will bind the obligors to pay any final judgment which may be rendered against the defendant in the district court on an appeal by the plaintiff from the justice's court.

*Error from Atchison District Court.*

THIS was an action brought in the district court of Atchison county, by John Campbell, Gilbert Campbell, Wesley Cummings, L. A. King, and E. A. Taggart, partners as Cummings Hardware Company, against Solomon R. Washer and Churchill J. White, partners as Washer & White, and S. R. Washer, to recover on a certain bond. The case was tried before the court without a jury, at the February term, 1887, and the court made the following conclusions of fact and of law, to wit:

"CONCLUSIONS OF FACT.

"1. The plaintiffs, John Campbell, Gilbert Campbell, Wesley Cummings, L. A. King, and E. A. Taggart, are, and at all times hereinafter referred to were, partners in business under the firm-name of The Cummings Hardware Company.

"2. On August 19, 1885, the plaintiffs commenced an action before T. M. Pierce, a justice of the peace of this county, against Fred. Kiddle and Ed. Kiddle, partners doing business

as Kiddle & Co., Kiddle & Son, and Fred. Kiddle, to recover of them the sum of $157.42 upon an account for goods; and at the same time they caused a summons to be issued against said Fred. Kiddle and Ed. Kiddle, partners as aforesaid, and also a garnishment summons upon proper affidavit therefor against Washer & White, the Exchange National Bank, the Atchison Savings Bank, the Atchison National Bank, and M. E. Wagstaff, as garnishees, it being alleged that they had property and money in their hands and under their control belonging to said Fred. Kiddle and Ed. Kiddle, partners as aforesaid, and that said garnishees were indebted to said Fred. Kiddle and Ed. Kiddle.

"3. The said S. R. Washer and C. J. White were at said time, and they have ever since been, partners in business under the name of Washer & White. On August 21, 1885, the said S. R. Washer, of said firm of Washer & White, garnishees as aforesaid, together with the said Ed. Kiddle, executed and caused to be filed with said justice of the peace an undertaking, of which the following is a copy:

"Cummings Hardware Company, Plaintiff, v. Fred. Kiddle and Ed. Kiddle, partners, doing business under the firm-name of Kiddle & Co., Defendants.—Before T. M. Pierce, justice of the peace, Atchison county, Kansas.—The undersigned, Ed. Kiddle, as principal, and S. R. Washer, as surety, for the purpose of procuring a release of proceedings in garnishment herein, in so far as it affects indebtedness due from garnishees to said Ed. Kiddle, bind ourselves unto said plaintiff in the sum of three hundred and fifteen dollars, that said Edward Kiddle will pay any judgment which may be rendered against him on final hearing of this case.                                           Ed. Kiddle.

S. R. Washer.

"Taken by me and approved August 21, 1885.

"T. M. Pierce, *Justice of the Peace*."

"And thereupon, with the consent of the plaintiffs, said justice of the peace made and entered of record an order releasing and discharging each of said garnishees as to said defendant Ed. Kiddle.

"4. On September 14, 1885, said S. R. Washer appeared before said justice of the peace in behalf of said Washer & White, garnishees, and answered that at the time of the service of garnishment summons upon them they were indebted to Kiddle & Co. in the sum of $169.60. Said M. E. Wagstaff also appeared by her agent, and made answer that she was indebted to said Kiddle & Son in the sum of $105.

"5. On October 26, 1885, said cause was tried by said justice of the peace and a jury, both of the defendants appearing in the action. Said trial resulted in a verdict in favor of said Fred. Kiddle and Ed. Kiddle on said day.

"6. On October 27, 1885, said Washer & White paid to said Kiddle & Co. the said sum of $169.60 for which they were indebted to said Kiddle & Co.

"7. On October 28, 1885, the plaintiffs filed an appeal bond in due form before said justice of the peace, which was duly approved by said justice of the peace on the same day, and the cause was brought regularly to this court by appeal.

"8. At the February term, 1886, of this court, and on April 8, 1886, upon the trial of said appeal, the plaintiffs obtained judgment against the said Fred. Kiddle and Ed. Kiddle, partners as aforesaid, for the sum of $159.70, debt, and $33.65, costs; and said garnishee M. E. Wagstaff was ordered to pay into court the sum of $105, and said Washer & White were ordered to pay into court the sum of $169.70, or so much thereof as might be necessary to satisfy said judgment and costs.    Afterward, on May 5, 1886, said M. E. Wagstaff paid into court under said order the sum of $41.10, which, after the payment of the costs, left the sum of $7.45 to apply on the judgment debt.    The said Washer & White have never paid any sum into court under said order, and the said Fred. Kiddle and Ed. Kiddle are insolvent.    And the said S. R. Washer has never paid said judgment nor any part thereof to the plaintiffs nor for their use."

"CONCLUSIONS OF LAW.

"1. By the judgment in favor of the said Fred. Kiddle and Ed. Kiddle before the justice of the peace, the liability of said firm of Washer & White as garnishees was discharged, and such discharge from liability was not affected by the subsequent appeal nor by the judgment of this court; and the order of this court requiring said Washer & White, as garnishees, to pay the sum of $169.70 cannot be enforced as against the said Washer & White.

"2. The defendant S. R. Washer is liable upon said bond recited in conclusion of fact 3, for the remainder due upon the judgment of the plaintiffs against said Ed. Kiddle as referred to in conclusion of fact 8, together with interest on the same, being the sum of $152.25, with interest thereon at the rate of seven per cent. per annum from May 5, 1886, up to the present time.

"3. Judgment should be rendered in favor of the said firm of Washer & White, defendants.

"4. Judgment should be rendered against the defendant S. R. Washer for the sum of $161.65, together with the costs as against him."

Upon these conclusions of fact and of law the court rendered judgment in favor of the plaintiff and against Solomon R. Washer for the sum of $161.65 and costs.    To reverse this judgment, *Washer* brings the case to this court.

*Elliston & Heath*, for plaintiff in error.

*Hudson & Tufts*, for defendants in error. ·

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought in the district court of Atchison county, on a certain bond, given before that time, in a certain case pending at the time of the giving of the bond in a justice's court, and given for the purpose and having the effect of releasing and discharging all the garnishment proceedings pending at the time of the giving of the bond in the justice's court.    The bond was not given under § 42 of the justices act, for the following reasons: 1. It was given before any one of the garnishees answered, and it had the effect to relieve them from answering.    2. It was given before any order was made by the justice with reference to such proceedings, and it had the effect to prevent the making of any such order.    3. And the bond provided, not for the payment or delivery of the money or property then in the hands of the garnishees and belonging to the defendants, but it provided for the payment of any judgment which might be rendered against Edward Kiddle, one of the defendants, on the final hearing of the case.    Neither party claims, nor has even suggested, that the bond sued on was given under § 52 of the justices act, and yet it is very similar to the undertaking provided for by that section.    It is so nearly like the undertaking provided for by that section, that it will be proper and perhaps necessary that we should construe a portion of that section. The substance of the undertaking provided for by that section is "to the effect that the defendant shall perform the judgment of the justice;" and by giving the undertaking, the attachment and garnishment proceedings are all absolutely discharged. Now under the undertaking above provided for, is the defend-

26—40 KAS.

ant in all cases bound to literally perform the judgment of the justice, and is he in all cases at liberty to utterly refuse to perform anything and everything else? If the judgment should be erroneously rendered against him, and if he should believe it to be outrageously erroneous, must he nevertheless perform it, or may he not appeal to the district court? And if he may appeal, and does appeal, then what judgment would he be required to perform? Would the parties to the undertaking be bound to see that he performed the judgment rendered by the justice notwithstanding his appeal? By the appeal and the subsequent rendering of a judgment in the district court, either for or against the defendant, the judgment of the justice would be swept out of existence, and only that of the district court would remain or have any force. And must the defendant perform that judgment? And if he does, or if it should be rendered in his favor, would the parties to the undertaking still be required to see that the judgment rendered by the justice should be performed? But the judgment of the justice might, on the other hand, be rendered in favor of the defendant, and might erroneously be so rendered: then may not the plaintiff appeal? And if the plaintiff should appeal and a judgment be rendered in the district court in his favor, then what judgment would the defendant be required to perform? Would he not be required to perform the judgment rendered in the district court? If not, then the plaintiff would have no security whatever. The plaintiff loses his security founded on his attachment and garnishment proceedings by the defendant's giving the undertaking, and if the undertaking is no security after the appeal is taken, then the plaintiff has no security after that time. It would certainly seem like injustice that the defendant by giving the undertaking, and by substituting it for the attachment and garnishment proceedings, should procure the discharge of the attachment and garnishment proceedings, and then by obtaining a wrongful judgment in the justice's court should deprive the plaintiff of all security. Suppose the justice, after rendering the judgment, should grant a new trial: what then? Would it not

place the parties and their rights back just where they were before the judgment was rendered? And an appeal does about the same thing. And it does more. It permits the district court to try the case again and to render just such a judgment as the justice should have rendered. And the rights of the parties would be just the same as though the justice had rendered the judgment. We are in-

*Justice's court—garnishment discharged by bond—appeal—obligors, bound.* clined to think that when a judgment is finally rendered in the district court on an appeal from a justice of the peace, such judgment has all the force and effect that it would have if it had been rendered by the justice. The district court takes the place of the justice, and its judgment is virtually the justice's judgment. In the case of *Woodward v. Witascheck*, 38 Kas. 760, 763, it is said that—

"The undertaking provided by that section is a substitute for the property attached; and in the event that the attachment is sustained and judgment given in favor of the plaintiff, he looks to the undertaking instead of to the property which was seized. The giving of the undertaking operates to discharge the attachment and the liability of any garnishee, and to restore the property to the defendant."

The bond, however, given in the present case uses stronger language than the foregoing section does, or than the undertaking provided for by that section need to do. It provides that the obligor shall "pay any judgment which may be rendered against him [the defendant] on final hearing of this case." Of course a judgment rendered before a justice of the peace and not appealed from is a final judgment, and the hearing that results in the rendering of such a judgment is a final hearing. But if an appeal be taken from the judgment of the justice, then such hearing and such judgment would not be final, but the only "*final* hearing of the case" and the only *final* judgment rendered in the case would be the final judgment had and the final judgment rendered in the district court. The language of the bond in the present case would naturally mean the judgment rendered on the final hearing of the case,

in whatever court the case might be when such final hearing should be had. Such a hearing would in fact be the only "final hearing of the case." What we have said in construing § 52 of the justices act will apply with equal or greater force in construing the language of the bond sued on in the present case. As before stated, the language of the bond is much stronger in support of the views herein expressed than the language of the section, and therefore it is clearer that these views are correct with reference to the bond than with reference to the section.

If the foregoing views are correct, and we think they are, then the judgment of the district court in this present action on the bond is correct. We think it is correct, and it will be affirmed.

All the Justices concurring.